Okay, the next case is No. 15-1603, Intelligent Verification against Majesco Entertainment Company. Before we start the clock, we want to ask you some questions, maybe both sides, about the designations in your briefs of confidentiality. So I'll let Judge Bison tell you what our concern is. Yeah, the first concern is that there is material, specifically the district court's opinion, that in the joint appendix has large segments that are marked as confidential, but in the addendum to the blue brief, it's not marked as confidential. So I'm going to assume that it's not being treated as confidential. Would you both approach the microphone so that we hear what you have to tell us? The district court's opinion, which it would be very strange to have the district court's opinion confidential on appeal, but I just wanted to make sure because it is marked in the joint appendix as confidential, but not in the addendum that's attached to the brief. Maybe this is something the appellant should speak to. If there's an easy answer, we'd like to hear it. Otherwise, they'll be, we'll give you an opportunity to go through it line by line and be specific, if that's what you prefer. Understood, Your Honor. I don't know specifically the material you're referring to, but I perhaps it's something he should first address. Your Honor, I think that's right, but I think in an abundance of costs in the district court, or actually it was the master judge that issued that opinion originally, issued it under seal and gave us an opportunity to look at that. I think it may just be. Right, but the sealing in the district court doesn't make it confidential here. I understand that, Your Honor, and I don't think that there's anything that's confidential in it that is there. Good. I have one more question, though. There are a variety of places in the red brief that a particular issue comes up and is marked confidential, and I would point you to pages 35 at line 123 and 6, where the percentages, I think you'll know what I'm saying, the percentages of Connect Revenue and Xbox Revenue and the apportionment percentages are also marked confidential. It would be very difficult for us to write an opinion without talking about that, at least with respect to the apportionment issue, because that's sort of the core of the apportionment issue. Do we, can we treat those as not confidential? I think it would be appropriate to treat that as non-confidential so long as the opinion does not treat as non-confidential the total revenues that are included, because if you were to do that, then you could do the math. Yeah, I see no reason that we need to talk about total revenues there if we do. I believe in that case that it would be okay, Your Honor. Agreed, Your Honor. Okay, thank you both. Well, then, let us proceed with the argument. All right, Mr. Kenney. May it please the Court, the judgment of the District Court in this case cannot stand as a result of several fundamental errors. Before you get into the details, I'd like to get a sense of how this plays out if we do anything other than either reverse across the board or affirm across the board, because we have a judgment that was entered, predicated effectively on the accuracy of the ruling on the evidentiary, on the expert's testimony. What if, for example, we were to say the Court was wrong about the Immersion Sony license and wrong about saying that the licenses, other licenses could not be considered for purposes of determining whether running royalty or a lump sum was the typical licensing system for Microsoft in this context, but we were to agree with the appellees with respect to the apportionment issue? Does that result in an affirmance in this case? Well, the problem with that, Your Honor, of course, is that it leaves the appellant without the ability to establish a base. Which was the problem that led to the dismissal, I take it? Actually, it was with respect to all of the issues that were addressed by the magistrate judge and excluded. Right, but what I'm trying to get at is, is it necessary for you, in effect, to win on the apportionment issue in order to get a reversal of the entry of summary judgment? Well, there is case law, Your Honor, that says that if there is an infringement and validity of the patent found, then the patentee is entitled to at least reasonable royalties. Now, the question becomes, well, how do you prove that and what evidence can be put forth for that purpose? But I gather that in the pleadings before the district court, you took the position that if you were deprived of the evidence of the, effectively, the Braddock's apportionment evidence, you weren't going to proceed. Even though there was some more money still on the table. In fact, there was an offer of judgment, if I recall. It would, Your Honor, make it significantly difficult for us to put on a full damages infringement. But I'm trying to get the answer as to what's the consequence. From our perspective, does that result in an affirmance, a reversal, a remand, or what? If the court finds, my position, I guess, would be that, obviously, we think that Mr. Braddock's apportionment was proper and it should be... I understand, but suppose we disagree with you on that issue. If we disagree, then I believe what ought to occur is that there should be a remand to the district court to make, to allow Mr. Braddock to make the proper apportionment. Okay. And would you think that would be true if we agree with the appellees on all three questions? Yes. So, no matter what happens here, there's no way for there to be an affirmance? No, I think there should be an affirmance. And the problem is, with respect to the ruling of the district court, it misses completely the point on both issues, both the comparability and the apportionment issues. And so, from our perspective, if you look at the facts in this case, both of those issues should be reversed. So, there are really three issues, as I mentioned, in the district court's order that exclude the entire damages report of Mr. Braddock. First was the finding that the Sony Immersion licenses were not minimally technically comparable. The second was the finding that Mr. Braddock didn't apportion properly. And the third was the finding that Mr. Braddock applied the incorrect form of royalty. With respect to the first of those, the minimum comparability of the Sony Immersion licenses, the district court concluded they did not meet the minimum standard of technical comparability, and it's wrong for several reasons. First, Dr. Ryan's opinion on technical comparability, upon which the damages expert, Mr. Braddock, relied, was not contested under any Daubert motion by the defendants, nor during Dr. Ryan's deposition was his testimony about that technical comparability contested. It clearly meets the standards set forth in Daubert. The methodology and principles used by Dr. Ryan to identify the discernible link between the Technology 073 patent and the Sony Immersion patents and licenses were clearly reasonable and reliable. Now, in Dr. Ryan's expert report, and this is at JA 15276 through JA 15282, he dedicated some 17 paragraphs to a reasoned analysis of the technology of the 073 patent and that of the Immersion patents and of the Sony products, and he came to his conclusion of the comparability of the two. He began in paragraph 305 through 311 by defining the scope and the advantages of the 073 patent. What page of the joint appendix are you on right there? This is starting at JA 15276, Your Honor, and this runs in Dr. Ryan's opening expert opinion, paragraphs 305 through 321. So he started his opinion with respect to the comparability by looking at what is the technology of the 073 patent. He went through a reasoned analysis of what the scope of the patent is, how it provides utility during interactive video game play, and how it fundamentally changes game play. In paragraphs 312 through 321, he analyzed the Immersion patents, he analyzed the Immersion products, and in paragraph 312, he noted his conclusion as the comparability of the minimum technical comparability of the 073 patent technology and the patents and products in Sony Immersion. And he found that they dealt with technologies in the gaming field, including technologies which enhance game play by providing improvements related specifically to game control during play. And then he went on to further break down his analysis by reasoning and reaching that conclusion in paragraph 313. He analyzed the Immersion patents themselves and he noted they cover Sony products in that case. He then went on to look at the Sony products. He looked at the expert witness report in the Sony case to determine what those products were and how they functioned and he cited specifically to the expert, Mr. Salisbury, in that case. Moving on to paragraph 315, he analyzed the value of the patented DualShock controller in the Sony product. But we're not to be evaluating all of that ourselves. We've got an abuse of discretion standard, don't we? It is an abuse of discretion standard, Your Honor, but the point in bringing all this forward is the question here is the opinion of Dr. Ryan, upon which Mr. Braddock relied in his expert report, is it admissible under the standard in Dauber? Did it meet the minimum scientific technical comparability standard? It's not his conclusions and that's the issue with the whole order with respect to the comparability issue. The court in the order below, it appears never looked at because there's no specific indication in the order that it looked at Dr. Ryan's methodology and made a determination about whether his methodology was reasonable or not and reliable or not. It doesn't look at Dr. Ryan's methodology. It goes straight to factual conclusions. The district court said, here's what the 073 patent relates to, here's what the Sony products relate to, and they're not comparable. And that was it. Any citation in this report's order to opinions is not to Dr. Ryan's opinion at all. If you read the order, the opinion, the order cites to Mr. Braddock's reasoning in relying on Dr. Ryan but never analyzes Dr. Ryan's methodology. And that's the test. That's the Dauber test. And that's why this exclusion of the Sony immersion license is not proper under Dauber. The court made the wrong analysis. It made factual conclusions rather than looking at Dr. Ryan's methodology and determining whether that methodology met the minimum standard. Of course, I suppose in any case in which one is making a determination of admissibility of evidence, or at least in many cases, the court is necessarily going to be making factual findings. Absolutely. So, I mean, well, so the fact that the court is making findings in effect, that this is outside of the range that would be permitted for an expert to testify doesn't in itself mean that she was wrong. I suspect there's sort of two ways to define findings in answer to that question. There are factual findings as to what Dr. Ryan did. What did he look at, you know, and how did he make his analysis? There are factual findings as to what he did. And that goes to what his methodology was. And if it was proper, it's proper that that opinion should be admissible. But making findings of fact in the case, such as the 073 patent technology is limited solely to an input device, a fact which is hotly contested in this case, Dr. Ryan clearly says that's not the case. So that is a factual finding that is not proper for the court to make when it's looking solely at whether his methodology was proper. That is a fact for the jury to decide when it's put on before the jury, is the technology of the 073 patent solely an input device or not? You're not suggesting that if the district court were to conclude that notwithstanding that the expert used appropriate methodology, the expert's comparison was so wildly far afield that a jury could not possibly find that helpful, that you're not suggesting that would be an impermissible finding, right? No, I'm not suggesting that at all. But it would seem that if the conclusion of the expert is so wildly unacceptable, it's very likely his or her methodology was not acceptable either. Yeah, but it's always appropriate for the court to say this is too wide of a mark to be admissible, right? I mean, that's what happens in... That's the gatekeeping function. But the problem with that is it is the gatekeeping function, but in exercising that gatekeeping function, it should focus on the methodology and not the ultimate conclusion. But even if the methodology is correct, the court can still say the ultimate conclusion is just not plausible, right? Isn't that a gatekeeping function as well? Well... Not simply saying you checked all the boxes, but you came up with a result... Yeah, I suppose it would be on a case-by-case basis, Your Honour. If it's... Once the expert meets the minimum standard by reliable methodology in his or her opinion, it ought to be an issue for the jury to decide. Now, you know, if it is such a wild conclusion that the judge who is deciding in his or her gatekeeping function that, well, I can't see how any jury is going to believe this opinion, then maybe that opinion ought to be tested by vigorous cross-examination or contrary evidence being submitted by the party, the opposing party, or even, if necessary, an instruction to the jury. So to take your argument to its limits, if I use proper methodology and then I conclude that the sky is green, not blue, well, sure, OK, that might be a situation where you would have to say maybe this person isn't qualified as an expert, not that they didn't, you know, use the proper methodology. But that's not the case here. I mean, it's clear from Dr. Ryan's report that he used... He was qualified as an expert. He was not challenged as an expert. His opinion was not challenged under a Daubert motion. His opinion was not challenged during his deposition. And he... In 17-some-odd paragraphs of his expert report, he went through a significant analysis of both the patented technology, the patents in the Sony Immersion case, and the products in the Sony Immersion case, and he came to a detailed description of why he found that they were comparable. And that's appropriate for consideration by the jury. Well, he said they were the most relevant and most comparable. Yes. But he doesn't talk about the others, the other licences. Yeah. Mr. Braddock looked at a number of other licences in this case and Dr. Ryan looked at a number of licences in this case and found that there were none that were more comparable. And it's... I'm sorry. Go ahead. I'm sorry. Go ahead. And it's probably not surprising. When you have an invention that is sort of a unique invention, as in this case, and the patentee has not been successful in licensing the patent, then the field of what's comparable licences is going to be a little bit less populated. It doesn't mean you have to abdicate the gatekeeping function and allow anything in, but it does mean that you should be... As a patentee, you should not be punished by the fact that this is a unique invention that is new to a field, that is a new application, and that there aren't many... You know, the available field of comparable licences is not populated. Well, now, as I understand it, there was the Sony immersion judgment, but there was also an immersion Microsoft settlement, right? Yes. And Dr. Ryan did not consider the Microsoft immersion settlement as more comparable. Yes. That's correct, Your Honor, because that settlement related to a number of other things besides just the patent and technology of the Sony... of the immersion patents. It had a number of other elements. There was a... You know, I don't want to go into the details of it, but there were a number of other elements to that licence that made it not more... The licence was broader. It was significantly broader. Well, that would suggest that if that licence... that licence would provide you a cap, because if the licence is broader, then presumably the licence adjusted this technology... I don't believe so, because it... I don't believe so, because you have to understand the circumstances under which that occurred. This was a settlement. It was a settlement to get Microsoft out of the case, and so the conditions under that settlement gave a benefit to immersion that they might not have otherwise taken if it was not for the exchange in that settlement. Is that now off the table, that proposed settlement? Off the table in the sense that Mr. Braddock is not... and Dr. Ryan are not considering a comparable... Yes. Okay. Well, I know your time is up, but would you take another, let's say, five minutes and just touch the highlights of the other two points you mentioned? Yes. Yes, Your Honour. So the second issue is Mr. Braddock's apportionment, and it's our position that Mr. Braddock's apportionment was absolutely appropriate in this case. He not only apportioned properly, but he apportioned as fully required under the applicable law, and it's critical to keep in mind in this case, and with respect to the technology of the 073 patent, the patent claims an apparatus, not a method. It's an apparatus claim. It doesn't involve a method claim as almost every other apportionment case cited by the appellees does, including Laser Dynamics and Lucent and Rescuet. Mr. Braddock apportioned to the patented technology by identifying 19 components out of a total of 30 in the Xbox 360, the console itself, okay? He identified 20 out of 34 components in the Xbox One, which is the second generation of that. A total of 39 out of 64 that are needed to comprise the apparatus claimed in the 073 patent. So this case is very different from cases where, for example, a party used the entire value of the product. The infringement here occurs when Microsoft combines a console, a Kinect, and a game. That's the infringing apparatus, okay? All of those are required to practice the infringing apparatus. And in this case, because this is an apparatus claim, the making, using, or selling of that apparatus is an infringement. It doesn't go to the issue of end user if Joe Gamer uses it in his living room. Once that sale is made, statute says make, use, or sell. Once that sale is made, that's an infringing apparatus. So all of those components are part of the infringement. But Mr. Braddock went further. He didn't say, well, I'm just gonna take the entire value of the Xbox console like in the iPhone case where the expert witness said, I'm gonna use the entire value of the iPhone. Mr. Braddock went inside the console. Even though Microsoft doesn't sell subcomponents, they only sell the console as a whole. He went inside the console and said, I'm gonna take out, with help from Dr. Ryan's analysis, those elements that aren't necessary for practicing the patented invention. And he removed those, and that was the apportionment that he did. So he clearly apportioned far enough in this case down to as far as he could to get to the value of, or the base of, what is the, what are the components that are necessary to practice the patented invention. And that was appropriate. And that's where he came up with the 89% and 93%. Correct, right. Do you think it is reasonable to say that the value of the facial recognition is 90% of the value of the Xbox? Well, that's, Your Honor, would be a question for the rate, not necessarily the base. So if he's apportioned, Mr. Braddock is apportioned as far as is required by the law, and in fact further in this case, we would contend. Once he reaches that base, then the issue becomes, using that base, you can look at the value, and there can be testimony as to what the value of facial recognition is in the accused products. And you can adjust the rate accordingly to get to the value of what facial recognition is in the invention. That's commonly done. The last issue is with respect to the royalty structure that was arrived at by Mr. Braddock. Mr. Braddock looked at some 23, 25 licenses of Microsoft, and not for the purpose of whether they were comparable or any of that, but simply to see what their licensing sort of policy practice was. And he came to the conclusion that looking at those 23, 25 licenses, that the proper royalty structure in this case should be a running royalty rate, and that was appropriate. Okay. Thank you. Thank you. Mr. Kinney? Mr. Davis? Good morning, Your Honors. May it please the Court. Could you help me out, Mr. Davis, with the question that I began with your opposing counsel on? The question of what happens if we do something other than an across-the-board affirmance or an across-the-board disposition on all three issues, either for you or against you? Absolutely, Judge Bryson, and I was planning on leading with that point. I respectfully disagree with my colleague. There are many paths to affirmance here. What Mr. Braddock did in deriving his reasonable royalty was to use an inappropriate royalty rate based on an uncomparable license and then to apportion improperly. And so if this court were to conclude either that the reliance on the Sony immersion agreement was not appropriate under Daubert in this court's damages cases or that the apportionment was not proper, under Daubert, then either one of those independently would lead to an affirmance. What about his argument that if, for example, he should prevail on any of these issues that he should have a remand? Let's say he prevails on the issues other than apportionment. He loses on apportionment. He should have a remand to come up with a new apportionment. Respectfully, Your Honor, we disagree. Mr. Braddock made and IVS made a strategic decision to make the apportionment that they did. He gave lip service to the cases and claimed to be aware of the cases in this court's precedent and he had an opportunity to do that in the first instance in the district court. Even after IVS and Mr. Braddock saw Ms. Davis's rebuttal report and he put in a supplemental damages report, he did not alter or change his analysis in any way and so we think it would be fundamentally unfair and inappropriate to remand it for him to essentially get another bite at the apple. So, Your Honors, in this instance, as Judge Lori mentioned, the standard of review here is in fact abuse of discretion and we believe that the magistrate judge in the first instance and the district judge on the objections under Rule 72A did not abuse their discretion at all in excluding Mr. Braddock and in excluding the Sonian Immersion Agreement and there are a number of reasons why that is true. The first is and I will note that Mr. Braddock relied on Dr. Ryan and Dr. Ryan provided his testimony principally as a gamer to testify about the increased enjoyment of the games that he was talking about and we cite to his expert report in our brief at page 31 he says based on his long-term multi-system experience as a gamer he believed that the Sonian Immersion Agreement and the IVS patent were comparable and that in and of itself Your Honor is something that we believe was an appropriate thing for Mr. Braddock to rely on and in fact Mr. Braddock recognized based on his discussions with Dr. Ryan that the agreement itself wasn't a comparable and that's why Mr. Braddock believed that he needed to multiply the actual compulsory license that the district court ordered in the Sonian Immersion case by three. The record was clear that the actual compulsory license that the district court awarded in that case after a jury determination of infringement and invalidity and while the entry of a permanent injunction was stayed was 1.37 percent and what Mr. Dr. Ryan said was well I just I believe that this is several times more valuable and he couldn't say he couldn't put a finer point on that and so what Mr. Braddock did was to simply say well several means more than two so I'm simply going to multiply that number by three and come up with his 4.11 percent royalty rate and so for that reason alone these the agreement between Sonian Immersion is not a comparable based on the positions that their experts took. Now well but if the if Dr. Ryan is right that the Immersion that the patent ensued here is much more valuable in its role in the game than the Immersion patent was then if you throw out the three times multiplier you have a number which probably understates at least according to Dr. Ryan the actual value of the of the patented invention to the to the game why isn't that albeit understated still at least a hard number that could be introduced to trial? Well it may be understated in Dr. Ryan's view and it may be a conservative estimate in Mr. Braddock's view but nevertheless they need to comply and comport with the Supreme Court precedent in Daubert and they need to comply with this court's damages law and there's there's no basis for Mr. Braddock or for Dr. Ryan to come to that conclusion other than Dr. Ryan's experience as a gamer. My colleague went through a number of the sections of Dr. Ryan's expert report where he purports to go through and compare and in fact what we see if we look at the patent that was at issue in the Sony Immersion case is that this patent relates to biometric identification to identify people and to use that in gameplay. The patents that were at issue in the Sony Immersion case didn't have to do with biometric identification at all. It didn't have to do with facial recognition at all. It had to do with a controller that you use that provided haptic feedback. And so the connection that Dr. Ryan was drawing here that both of these technologies and patents related to gameplay and video games really is akin to what we saw in Lucent in which the expert improperly said well the patents are comparable simply because they are PC related. It's not enough. There needs to be more that the expert should have done here. And I know your honors that what in fact what Dr. Ryan did even in looking at the Sony Immersion Agreement that did not relate to facial recognition. He said that that was comparable but none of the four patents that were at issue in the Microsoft licenses that Ms. Davis relied on in Rebuttal which there's no dispute related to the specific accused product here. A system that uses facial recognition. Dr. Ryan just discounted those because he said they didn't apply to the same technology. Well what's happening here your honor it was just cherry picking that was going on. What Dr. Ryan did was to look at the Sony Immersion Agreement and Mr. Braddock in consultation with Dr. Ryan decide that that was the agreement that allowed them to take the position that they did that this technology was worth far more than it actually was. It wasn't allowed that the district court affirmed and then entered compulsory license. And as your honor noted during my colleagues presentation even if this court were to conclude somehow that the Sony Immersion Technology was comparable. The license that would have been far more comparable under this court's precedence would have been the settlement agreement that Microsoft and Immersion entered into in that case. Immersion sued Microsoft and it related to the same technology that was at issue in this case. And Mr. Braddock looked at that Microsoft Immersion settlement agreement and he discounted it because he said there were other factors involved. But it can't be the case that the technology itself is comparable and yet a court-imposed compulsory forward-looking license after a jury verdict against another party accusing another system is more comparable than an analysis that took place of a negotiation between the Microsoft in this case, the very party that would have been  in the 073 hypothetical negotiation in Immersion. I believe that's a separate and independent reason why the analysis that Mr. Braddock conducted here was inappropriate. Now... You may not have this at your fingertips but does Dr. Ryan specifically address the Immersion Microsoft settlement anywhere in his expert report? Because I can't remember. Dr. Ryan does not address it in his expert report at all. Mr. Braddock in his expert report does. I've got a record site here in which it's JA 14 010 to 011 and I'm not sure if that's a site to the deposition or to the expert report but he certainly considered it and he rejected it because he believed that it wasn't comparable and it didn't provide the best estimate of what would have been reasonable under the circumstances. Now I'd like to move for a moment to the apportionment issue. Even if this court were to somehow conclude that the appellees are correct the appellants are correct there's still a fundamental problem and that is that Mr. Braddock did not apportion properly. I took note to write down the cases that my colleague mentioned when he was stating that Mr. Braddock had done the appropriate analysis and I heard him mention some of the earlier cases from this court's jurisprudence but I didn't hear him mention phonetics and I didn't hear him mention Erickson and those are two of the more recent cases in which this court has said very clearly that oftentimes it's not enough to simply identify the small assailable patent practicing unit and to in this particular instance what Dr. Ryan did was to go down a bill of materials and place a check box next to everything that was necessary and required to allegedly practice the accused the alleged invention and then Mr. Braddock took a percentage of that based on the cost and applied that to the actual sales price of those components and he stopped there. He didn't do anything further and this is a case in which he was required to do something further. It wasn't enough to do what he did because as you noted Judge Bryson that essentially suggests that the entirety of those components find their worth find their value in the claimed invention here and we know that that can't be the case because in this specific case even Dr. Ryan took the position that not all uses of facial recognition in the accused systems practice the asserted claims. There are instances in which a gamer can sign in for example using biometric facial recognition. There are instances for example when someone can jump in and jump out of gameplay and facial recognition issues but those were activities in which facial recognition was not accused of infringement. It was only what's called session identity which is the actual gameplay in which Dr. Ryan said that that entertaining interaction is what practices the claims. I saw something in the record that gave me the impression that at least in some iterations there may be an option to purchase a device or a game that has facial recognition versus one that doesn't. Is that the case or is there not any such option available in any of these products? I'm not sure that I specifically recall that. What I can tell your honor though is two things that I think get to a similar point and that is that there were three series of games here that were games that didn't require the Kinect at all. There were some in which you may or may not use the Kinect. But the fact is that the Xbox 360 was on the market using the same components that Dr. Ryan and Mr. Braddock rely upon except for the Kinect to play games and to provide user enjoyment. And there's a difference in the price and then when the Xbox One came on the market that is a system that also where you can play games that don't use the facial recognition technology. Mr. Braddock made no effort to carve out or to call out from his so-called apportioned royalty base those licenses. For that reason in and of itself his opinion was not reliable and was properly excluded under Daubert and under this court's precedence. Let me ask you you may have been just about to turn to this but in case you weren't could you address the question that's I guess the third issue which is whether the Microsoft licenses that contained running royalty rates as opposed to lump sum payments were admissible not for the amount of the license or anything else but simply to show that this is the kind of license that Microsoft frequently enters that is to say a running royalty. Why isn't that if introduced without any reference to the amount or anything else simply that it's a running royalty as opposed to a fixed amount why isn't that a reasonable piece of evidence for the jury to have? So in some circumstances your honor it may be that that would be relevant and it might be that it's admissible but I think one of the threshold questions is whether it is appropriate for an expert to rely on those informing his opinion and given that Mr. Braddock took the express position that none of those licenses was a comparable not a single one of them was a comparable then we believe it was inappropriate and improper under Daubert for him to rely on those licenses for any purpose. Unless you have further questions we'll see my time. We'll see. Any more questions Mr. Davis? Thank you Mr. Davis. If I may work backwards from the issues that Mr. my colleague raised the important thing to keep in mind here is IBS accused only those systems which include all the infringing the combination okay Mr. Davis is correct prior to the advent of the Kinect the introduction of the Kinect there were Xbox 360 consoles on the market. They are not accused of infringement. However when the Kinect was introduced and it was sold bundled with a game and a party who bought that Kinect and play a Kinect game second thing is IBS has only accused Kinect games as infringing only when a Kinect game is sold used with the Kinect and the console is that an infringement so there are many times when non-Kinect games could be used and we're not accusing infringement in that Kinect games are 10 times as expensive as the former and therefore it doesn't sound like the 90% figure that you used as a base is really much of an indication of added value. Well again that's apportioning as far as is absolutely required but in fact further than is required by the law to get to those elements or those components that are necessary by virtue of determination of respective relative value if it does then I don't think that I'm dubious that 90% of the value of the Xbox is facial recognition and you're not suggesting that. No what I'm suggesting is once you apportion to that point then when you go to the issue of value it's handled by the rate not by the apportionment not by the base that's where the balance comes. So the suggestion that somehow all consoles are accused of infringement in this case is not correct and the real problem here is this it's the definition of use because the Appleese would say in order to infringe there has to be a person plugging a game into a console and using the connect game and during that connect game sometimes facial recognition is used and sometimes it's not. That is not the requirement here. That is a method claim. If there is a method claim that might be the case. This is not a method  This is an infringing combination and once it is sold Microsoft gets the value of that infringement. Done. They take their money home. It doesn't matter if somebody leaves it in a box or opens it and starts playing it on Christmas morning. It's still an infringement regardless of how often it's used. And that's the important point. Use is not relevant here. It's the making, using, or selling of the infringing combination. Because this is an apparatus claim that's an infringement. Okay. Thank you Mr. Kenny. Mr. Davis. The case is taken under submission.